```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF MISSISSIPPI
                  JACKSON DIVISION
```

DAVID MILES SWAIN                                         PLAINTIFF

VS.                              CIVIL ACTION NO. 3:12CV896TSL-JMR

AMY NICOLE MCINTOSH                                       DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Amy Nicole McIntosh to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiff David Miles Swain has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is not well taken and should be denied.

The parties to this case, formerly husband and wife, divorced in 2007. The original Child Support, Custody and Property Settlement Agreement entered by the Chancery Court of Madison County, Mississippi, provided that the parties would share joint legal and physical custody of their minor son (Gabriel Swain, born March 2003). In August 2011, after defendant had moved from Mississippi to North Carolina, and following extensive litigation between the parties, an Agreed Order was entered by the Chancery Court which provided for defendant to have primary custody of the

child and for plaintiff to have visitation according to terms set forth in the Agreed Order.[1]

On September 26, 2012, McIntosh filed a Petition for Modification of Visitation Schedule, Petition for Contempt and Other Relief in the Madison County Chancery Court, in which she alluded to circumstances (including a "shocking [and] disturbing episode" at a North Carolina airport) which she alleged placed the child at risk of irreparable harm or damage and necessitated a change in the visitation schedule. She further complained that Swain had failed and refused to comply with the terms of the 2011 Agreed Order by such conduct as maliciously misleading her about vacation plans so as to thwart her travel plans, willfully and intentionally refusing to allow regular telephone visitation with the child, and allowing the child to engage in dangerous activities without proper supervision.

---

[1] The Agreed Order sets forth a schedule of visitation by which the parties alternate visitation during annual Spring Breaks, Fall Breaks, and Thanksgiving and Christmas holidays. Swain has visitation for the entire Summer Break each year. Additional provision is made for a weekend visitation each month. The costs of transportation, by plane or automobile, are shared equally.
  The Agreed Order additionally gives the non-visiting parent the right to telephone visitation on Mondays, Wednesdays, Fridays and Sundays at 6:30 p.m., for twenty minutes, and directs that beyond that, the parties are to cooperate with each other to allow for liberal telephone visitation with the non-visiting parent at other dates and times as agreed between the parties. Finally, it provides for one thirty-minute Skype visitation per month by the non-visiting parent.

Thereafter, on December 28, 2012, Swain filed the present action in this court, invoking jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332, asserting a number of tort claims based on allegations that McIntosh has consistently and continuously engaged in conduct intended to obstruct and make difficult his visitation periods with the child, such as by refusing to agree on dates and times for visitation and for locations for exchange of the child; intentionally changing the details of scheduled visitation at the last minute; insisting on visitation terms which were burdensome for plaintiff for the sole purpose of harassing plaintiff; threatening plaintiff with legal action if he would not agree to the terms of visitation; misrepresenting facts relating to visitation periods and exchanges; following and harassing plaintiff during periods of visitation; being intentionally late to visitation exchanges and otherwise making visitation inconvenient for plaintiff; monitoring plaintiff's phone visits with the child and preventing the child from speaking freely with plaintiff; and speaking with the child in a manner intended to alienate the child from plaintiff.

Swain alleges additionally that McIntosh has made numerous unfounded complaints about him to law enforcement, as follows: during his 2012 Spring Break visitation with his son at his home in Madison, McIntosh made a complaint to the Madison Police Department relating to the minor child, which resulted in police

officers being dispatched to Swain's home, only to find no evidence of wrongdoing; when picking up the child at the North Carolina airport for summer visitation in June 2012, Swain was subjected to a lengthy detention by airport security at McIntosh's instance but was ultimately allowed to leave with the child; during the 2012 Christmas visitation exchange in Madison, Georgia, McIntosh arrived with law enforcement officers, to whom she had falsely reported that Swain had sent her threatening text messages; and while following Swain after he left with the child on this last occasion, McIntosh called the highway patrol to report plaintiff for driving five miles per hour over the speed limit.

On the basis of these allegations, Swain asserts causes of action for negligent and/or intentional infliction of emotional distress, negligence and gross negligence, and malicious prosecution and abuse of process, for which he seeks compensatory damages of $250,000 and punitive damages of $500,000, along with an injunction barring plaintiff from "involving law enforcement officers in the parties' dealings when no legal right to involve them exists," and "from conducting herself ... in a manner designed to cause Plaintiff emotional distress and adversely affect his relationship with his minor son."

McIntosh has moved to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1). She does not contend that the

requisites for diversity jurisdiction are lacking, and they are not.  The parties are citizens of different states and the amount in controversy, as established by Swain's damages demand, exceeds $75,000, so that the court has diversity jurisdiction over the case.  See 28 U.S.C. § 1332.  Notwithstanding this, McIntonsh maintains that this court is barred from exercising jurisdiction in this cause since exclusive jurisdiction over all matters relating to the custody of the minor child is vested in the Madison County Chancery Court, which rendered the custody decree. McIntosh notes that under Mississippi law, "the chancery court of the proper county shall have jurisdiction to entertain suits for the custody, care, support and maintenance of minor children and to hear and determine all such matters," Miss. Code Ann. § 93-11-65(1); and once such court "has made a child custody determination [such court] has exclusive, continuing jurisdiction over the determination," Miss. Code Ann. § 93-27-202.  This principle was recognized by the Mississippi Supreme Court in Ladner v. Ladner, where the court wrote:

> [J]uvenile jurisdiction acquired by a court in divorce proceedings over the subject of the custody and maintenance of the child or children of the parties to the divorce suit is not only continuing, but is also exclusive and precludes any other court in the same state ... from thereafter acquiring or exercising jurisdiction over the same subject.  All proceedings related to the maintenance and custody of such child or children of the divorced parents must thereafter be brought in the same court as that in which the original decree affecting that subject was rendered.

5

206 So. 2d 620, 624-25 (Miss. 1968), abrogated on another issue by Bubac v. Boston, 600 So. 2d 951 (Miss. 1992)).  See also Helmert v. Biffany, 842 So. 2d 1287, 1291 (Miss. 2003) (stating that "[u]nder Mississippi law, chancery court has continuous and exclusive jurisdiction over custody proceedings") (citing Ladner, 206 So. 2d at 624-25; Miss. Const. art. 6, § 159 (stating that "Chancery Court shall have full jurisdiction of ... (a) all matters in equity, (b) divorce and alimony, and ... (d) minor's business....").  McIntosh argues that since plaintiff's putative claims herein relate to alleged behavior which occurs during the exchange of the child for visitation or otherwise in relation to the court-ordered visitation, it follows that jurisdiction is not proper in this court as the Chancery Court of Madison County has exclusive jurisdiction over all contested issues between the parties.

For his part, Swain acknowledges that jurisdiction over issues of the parties' respective custody and visitation rights would lie exclusively in the Madison County Chancery Court; but he denies that his claims fall within that category and that therefore, this court may proceed herein without intruding upon the chancery court's exclusive jurisdiction.  Indeed, as Swain notes, in this action, he is not challenging the Chancery Court's custody determination or the provisions of the Agreed Order establishing the parties' respective visitation rights.  He is not

6

attempting, directly or indirectly, to modify or set aside the Agreed Order on custody and visitation.  Defendant's objection to jurisdiction on this basis is rejected.

McIntosh argues alternatively, but along the same lines, that Swain's complaint, although ostensibly asserting tort claims, is in effect for contempt of the 2011 Agreed Order, which falls within the Chancery Court's exclusive jurisdiction.  Swain acknowledges in his response that under Mississippi law, "[a]n action for contempt must be brought in the same court which rendered the original decree and is to be litigated as a matter ancillary to the original action." Tollison v. Tollison, 841 So. 2d 1062, 1064 (Miss. 2003); see also McDonald v. McDonald, 39 So. 3d 868, 885 (Miss. 2010) ("[T]he Mississippi Supreme] Court has held that contempt matters are 'ancillary to the original action' giving the original court 'continuing jurisdiction over the subject matter'...") (quoting Tollison v. Tollison, 841 So. 2d 1062, 1064-65 (Miss. 2003); cf. Dale v. Family Guar. Life Ins. Co., 205 F. Supp. 2d 620, 622 (S.D. Miss. 2002) (federal court could not exercise jurisdiction over contempt proceeding involving state court, since under Mississippi law, "'[t]he authorities are legion that the power to punish for contempt rests solely with the court contemned, and one court cannot punish a contempt against another court'") (quoting Culpepper v. Mississippi, 516 So. 2d 485, 487 (Miss. 1987)).  But he insists that contrary to

defendant's urging, the "true nature" of his claims is not for contempt of any chancery court order. That is, he is not asking this court to enforce an order of the Madison County Chancery Court or seeking punishment for violation of a provision in an order from that court. The court agrees and finds that jurisdiction is not foreclosed on this basis.

Defendant last seeks dismissal based on the "domestic relations exception" to diversity jurisdiction, a judicially-created exception whereby federal courts decline to adjudicate domestic relations disputes even though the requirements for diversity jurisdiction are present. In <u>Ankenbrandt v. Richards</u>, the Supreme Court recognized the validity of the domestic relations exception, but interpreted the exception narrowly, as "encompass[ing] *only* cases involving the issuance of a divorce, alimony, or child custody decree."  504 U.S. 689, 704, 112 S. Ct. 2206, 119 L. Ed. 2d 468 (1992) (emphasis added); <u>id.</u> at 703, 112 S. Ct. 2206 (stating that "the domestic relations exception divests the federal courts of power to issue divorce, alimony, and child custody decrees"); <u>see</u> <u>also</u> <u>Marshall v. Marshall</u>, 547 U.S. 293, 308 126 S. Ct. 1735, 1744-46, 164 L. Ed. 2d 480 (2006) (reiterating <u>Ankenbrandt</u>'s holding that only "divorce, alimony, and child custody decrees" remain outside federal jurisdictional bounds, and its recognition that while state tribunals have developed special proficiency in handling issues that arise in the

granting of [divorce, alimony, and child custody] decrees," federal courts are equally equipped to deal with complaints alleging the commission of torts) (citing Ankenbrandt, 504 U.S. at 703, 704, 112 S. Ct. 2206); Vulcan Materials Co. v. City of Tehuacana, 238 F.3d 382, 386, at n.2 (5th Cir. 2001) ("The exception is a narrow one, generally only prohibiting federal courts from issuing divorce, alimony, or child custody decrees."); Cole v. Cole, 633 F.2d 1083, 1087 (4th Cir. 1980) ("[T]he district courts have no original diversity jurisdiction to grant a divorce, to award alimony, to determine child custody, or to decree visitation.").

Consistent with the Court's directive in Ankenbrandt that the exception be applied narrowly, the Fifth Circuit has explained that in determining whether the exception applies,

> The decisive factor is not the formal label attached to the claim (tort, contract, etc.), but the type of determination that the federal court must make in order to resolve the case.  If the federal court must determine which parent should receive custody, what rights the noncustodial parent should have, how much child support should be paid and under what conditions, or whether a previous court's determination on these matters should be modified, then the court should dismiss the case.  On the other hand, if the court need only decide whether an already-set custody or child support award has been complied with, or whether the parties have committed acts that would be actionable even if everyone involved was unrelated, then the federal courts should retain the case.

Rykers v. Alford, 832 F.2d 895, 900 (5th Cir. 1987).

The Court in Ankenbrandt identified McIntyre v. McIntyre, 771 F.2d 1316, 1317 (9th Cir. 1985) (opinion of Kennedy, J.), as among Courts of Appeals cases expressing the better reasoned view of the domestic relations exception as narrowly confined to suits for divorce, alimony or child custody decrees. 504 U.S. at 703 n.6, 112 S. Ct. at 2215 n.6. See McIntyre, 771 F.2d at 1317 ("[T]he exception to jurisdiction arises in those cases where a federal court is asked to grant a decree of divorce or annulment, or to grant custody or fix payments for support."). The plaintiff in McIntyre sued his ex-wife and her mother, sister and brother-in-law alleging they had secreted his minor daughter to prevent him from exercising his visitation and parental rights ordered by a Washington state court. McIntyre, 771 F.2d at 1317. The McIntyre court held that given its limited reach, the domestic relations exception did not preclude a federal court from exercising diversity jurisdiction over the father's state law claims for tortious interference with his custodial rights. Id. at 1318. The court reasoned:

> In the case at bar, plaintiff seeks monetary damages for alleged past breaches of visitation rights granted by the state court. He bases his action on a claim of intentional tortious interference that does not implicate questions of spousal or parental status. The primary issue concerns not the status of parent and child but rather the injury suffered by plaintiff as a result of his former wife's alleged interference with his court-ordered visitation rights and the concomitant alienation of his daughter's affections. The suit does not seek to determine status or to enforce a domestic

10

>    relations decree in the guise of some other action.  The
>    validity or scope of the state court's domestic
>    relations judgment is not here in question.  The claim
>    stated falls within neither a status nor a coercive
>    relief category of domestic relations issues, and the
>    jurisdictional exception is not applicable.

McIntyre, 771 F.2d at 1318.[2]

Similarly, in Ervin v. Estopare, No. CV 08-122-M-DWM-JCL, 2009 WL 50169, 4 (D. Mont. Jan. 6, 2009), a plaintiff sued his former wife in federal court to recover damages for his ex-wife's allegedly tortious conduct in interfering with his visitation rights as established in the divorce decree.  Specifically, he alleged that the defendant had tortiously interfered with his contact and socialization with the child, had destroyed his

---

[2] In Goins v. Goins, 777 F.2d 1059 (5th Cir. 1985), a pre-Ankenbrandt case, the Fifth Circuit affirmed the district court's determination that the domestic relations exception precluded jurisdiction over a similar tort claim for damages against her former husband and seventeen of his relatives and associates conspiring to and wrongfully taking and withholding their child from her lawful custody. Id. at 1062-63.  In reaching this result, the court emphasized that in addition to seeking damages, the plaintiff sought modification of the state court custody order. Id. at 1062.  This, the court noted, distinguished Goins from an earlier case, Fenslage v. Dawkins, 629 F.2d 1107 (5th Cir. 1980), in which the court had affirmed a district court's judgments for a plaintiff who sued her ex-husband and his relatives for conspiring to take and conceal her children in violation of a Texas state court custody order and for intentional infliction of mental anguish. Goins, 777 F.2d at 1068 ("The Fenslage plaintiff did not ... seek modification of the custody order.... The only determination for the federal court was whether the defendant violated the custody order and the damages resulting from that violation.")")(citing Fenslage, 629 F.2d at 1108-09).

11

relationship with the child, and had caused the plaintiff to suffer emotional distress. Ervin, 2009 WL 50169, at 3. As here, the defendant sought dismissal based on the domestic relations exception, arguing that her ex-husband's allegations revealed "essential[ly] a custody dispute[]" that had been inappropriately "transformed" into a tort action, and pointing out that the parties were already involved in two ongoing state court cases in which they were litigating their custody and visitation rights. Id. The court found the husband's claims fell outside "the limited scope of the domestic relations exception," stating,

> [The defendant's] motion is defectively premised on her mischaracterization of [the plaintiff's] claims as asserting custody, visitation, and parenting issues which [he] seek[s] to litigate through this action. Properly construed, [his] claims do not seek to litigate parental, custodial, or visitation rights, to challenge or modify any existing custodial or visitation decree, to enforce any decree, or to challenge the validity of any prior decree. See McIntyre, 771 F.2d at 1318. [The plaintiff's] claims instead seek compensation for [the defendant's] alleged interference with [his] established visitation rights, and [his] relationship with [the child]. [He] alleges [the defendant] has tortiously interfered with [his] established rights under an existing custody and visitation decree. Such claims are sufficient to establish the existence of diversity jurisdiction. McIntyre, 771 F.2d at 1317-18.

Ervin, 2009 WL 50169, at 4. See also Drewes v. Ilnicki, 863 F.2d 469, 471 (6th Cir. 1988) (holding that federal court had jurisdiction over diversity lawsuit alleging that former spouse committed intentional infliction of emotional distress by interfering with visitation rights and by interfering with the

12

plaintiff's employment); Wasserman v. Wasserman, 671 F.2d 832, 835 (4th Cir. 1982) (former wife's diversity action for torts of child enticement, intentional infliction of emotional distress and civil conspiracy based on allegations that ex-husband removed children from plaintiff's custody and concealed their location and prevented them from contacting or returning to plaintiff did not fall within exception as the plaintiff was seeking a determination of present or future rights as to custody or visitation, which matters had already been definitively resolved by the state court).

Like the claims in McIntyre and Ervin, Swain's claims in this case for alleged negligent and/or intentional infliction of emotional distress, and for negligence and gross negligence in obstructing his relationship with his minor son, do not fall within the domestic relations exception.  Swain does not ask this court to determine custody or visitation rights or to modify the Chancery Court's determination on these matters.  Rather, like the plaintiffs in McIntyre and Ervin, he seeks compensation for his ex-wife's alleged interference with and obstruction of his established visitation rights and relationship with his minor son.  The domestic relations exception does not foreclose this court's adjudication of these claims.

In Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980), also cited by the Court with approval in Ankenbrandt, 504 U.S. at 703 n.6, 112

13

S. Ct. at 2215 n.6, the Fourth Circuit reversed the district court's order which relied on the domestic relations exception to dismiss a former husband's claims against his ex-wife for malicious prosecution and abuse of process, arson and conspiracy and conversion. In reversing, the court stressed that the domestic relations exception does not apply merely because there are intrafamily aspects to the claims; instead, a court "must consider the exact nature of the rights asserted or of the breaches alleged...." Cole, 633 F.2d at 1088-89. Examination of the nature of the claims at issue led the court to conclude that the case did not present any true domestic relations claims. Id. at 1088. The alleged breaches were not of duties which arose solely from family relations law: "The duty to abstain from malicious prosecution, from abuse of process, from arson, and from conversion does not arise out of or require, in order to give rise to the duty, a present or prior family relation." Id. at 1988. "[D]eciding this case would not require the court either to adjust family status or to establish duties under family-relations law or to determine whether or not such duties had been breached"; "the claims asserted could have arisen between strangers, and certainly between people with no marital relationship whatever"; and the asserted causes of action "do not require the existence of any rule particularly marital in nature as a substantial ingredient to give them vitality." Id. These same considerations lead the

court to conclude that the domestic relations exception is inapplicable and does not divest the court of jurisdiction over these claims.

Based on all of the foregoing, it is ordered that defendant's motion to dismiss is denied.

SO ORDERED this 7th day of June, 2013.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE
